**HENRY SPEN and COMPANY, Inc.,**
v.
**The UNITED STATES.**
No. 241-55.

United States Court of Claims.
July 12, 1957.

Nathan L. Silberberg, Washington, D. C., for plaintiff.

Edgar H. Brenner, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

This suit arises from a contract under which plaintiff supplied 50 trailer-mounted hi-pressure steam cleaning units to the United States Marine Corps.

Plaintiff contends that it sustained a loss in the amount of $5,868.50, which it claims is the difference in cost of parts and accessories for the units which defendant insisted it provide under the contract, and which it in fact supplied, and what the cost would have been had plaintiff been permitted to manufacture them itself or to purchase them from independent suppliers. It also says that defendant refused to inspect and accept delivery of the first or pilot model of the units it wished to supply, and it claims the unit price of $1,269.88 therefor.

The Marine Corps had immediate need for the trailers in suit in order to supply troops in the field during the Korean War. The contract was negotiated under the authority of section 2(c) (1) of the Armed Services Procurement Act, 41 U.S.C.A. § 151, which allows the Armed Services to procure equipment without the necessity of formal advertising and solicitation of bids when necessary in the public interest in time of national emergency. There is no claim that the contract was made contrary to law.

Plaintiff had previously supplied the Marine Corps with units of the type called for by the contract in suit. In 1950, in submitting a bid on such trailers, they had furnished a drawing and photographs of the completed unit which they intended to supply. Defendant requested and had received permission from plaintiff to use the drawing in soliciting bids for the contract in suit. Invitations to negotiate on the basis of the specifications and the drawing were sent to eighteen prospective bidders, three of whom, including plaintiff, made offers. The specifications and drawing showed the use of Homestead equipment on the trailer.

The specifications on which plaintiff and others were invited to bid called for "the steam generating unit to be oil-fired, gasoline engine powered, Model No. JO (factory modified), as manufactured by the Homestead Valve Manufacturing Company, Coraopolis, Pennsylvania, of current manufacture, and is to be mounted on the trailer chassis between the water supply tanks and in the proximate location shown on the attached drawing."

In previous contracts the units which defendant desired to procure were described in the identical terms which the instant contract used, except that previous contracts called for a steam generating unit manufactured by Homestead but added the words "or equal"; whereas the present contract eliminated the words "or equal."

Plaintiff had previously supplied more than 600 such units to the defendant, each of which called for a steam generating unit manufactured by the Homestead Valve Manufacturing Company, and these units had been supplied.

These units were specified since they had been rigorously field tested by the Marines, and had proven suitable for their use, and the parts in the older units were 89 percent interchangeable with the units they were making in 1952.

Inasmuch as previous contracts between plaintiff and defendant had called for a Homestead steam generating plant "or equal," and since in the instant contract the words "or equal" were eliminated, there can be no doubt that both parties knew or should have known that only the Homestead unit was to be supplied. The so-called accessories were actually component parts of the unit, and when the contract called for a Homestead "steam generating unit," it meant the complete unit, made up of its different parts. Plaintiff undertook to acquire from Homestead the unit, less its cover, stack, hose, foot valve, and strainer. Since these were integral parts of the unit, Homestead had never quoted plaintiff a price on the unit less these parts.

The contract, in calling for the unit, called for each part thereof, and there was no justification for the attempted substitution for some of the parts. In performing previous contracts, plaintiff had supplied the unit with all its parts.

Even if this contract, like previous ones, had contained the words, "or equal," plaintiff has not proven that its substitutes for the parts were the equal of the Homestead parts. One of its substitutes was for the suction hose, which of necessity had to be of required strength to keep it from collapsing, thus cutting off the supply of water, without which the unit would not work. Plaintiff sought to get a suction hose from the Home Rubber Company. This company wrote plaintiff that they could not say that the hose it had ordered "would meet your requirements as a suction hose unless we were more familiar with the vacuum and the rate of flow of the pump on the steam jenny."

■ There is no merit in plaintiff's claim of damages for failure to inspect. Defendant justifiably refused to inspect the unit proffered because it knew it contained substituted parts, and defendant wanted no substitutes.

Plaintiff's claim is without merit. Its petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.